IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGIANA PRESKAR, et al.,

    Plaintiffs,                        CIV S-07-0874 GEB EFB PS

    vs.

THE UNITED STATES OF AMERICA,      FINDINGS AND RECOMMENDATIONS
THE CONGRESS OF THE UNITED
STATES OF AMERICA, THE U.S.
DEPARTMENT OF EDUCATION,
MARGARET SPELLING, Secretary of
Education, THE STATE OF CALIFORNIA,
THE CONGRESS OF THE STATE OF
CALIFORNIA, THE CALIFORNIA
DEPARTMENT OF PUBLIC EDUCATION,
JACK O'CONNELL, Superintendent of
Public Instruction, THE CALIFORNIA STATE
BOARD OF EDUCATION AS DOE NO. 1, AND
DOES 2 TO 100, inclusive,

    Defendants.
_____/

        This action, in which plaintiffs are proceeding *in propria persona*, was referred to the undersigned by Local Rule 72-302(c)(21), pursuant to 28 U.S.C. § 636(b)(1). All named defendants have filed motions to dismiss, which, together with plaintiffs' oppositions, were deemed submitted without oral argument. *See* L.R. 78-230(h). Having considered all submitted materials, the court recommends that defendants' motions to dismiss be granted without further

1

leave to amend.

## I. BACKGROUND

This case is proceeding on the amended complaint filed on August 20, 2007. Plaintiffs Georgianna Preskar and Terri Lawrence are, respectively, a former substitute school teacher and a parent of a child formerly enrolled in the Elk Grove Unified School District. Initially, plaintiffs styled themselves as "lead plaintiffs" in a purported class action joined by more than 160 other pro se plaintiffs. The court denied plaintiffs' request to be certified as a class on the basis of their pro se status. *See* Order July 27, 2007. In the amended complaint, Ms. Preskar and Ms. Lawrence identify themselves as the only remaining plaintiffs. *See* First Amended Complaint ("FAC"), ¶ 17.[1]

Plaintiffs bring this action under 42 U.S.C. § 1983 and allege that their rights under the First, Ninth and Fourteenth Amendments of the United States Constitution have been violated by virtue of public schools' promotion of "diversity education." FAC, ¶¶ 4, 6, 7, 28. They allege that "throughout this nation" "enforced diversity education" from kindergarten through college "discriminates against people of European descent, Judeo-Christian faith, American heritage, and people who hold viewpoints, or closely held personal beliefs that are contrary to a particular type of diversity thinking." FAC, ¶ 28. They also allege that these categories (i.e., European descent, American heritage, etc.) are unfairly "excluded from diversity status." *Id.* Plaintiffs fail to identify the specific educational programs that they challenge, but recount their experiences with such programs during their brief interactions with the Elk Grove Unified School District ("EGUSD").

---

[1] While most of the other plaintiffs have filed "requests for dismissal without prejudice," the court's records show that there are at least fifty-five pro se plaintiffs who have not done so. Regardless, the court finds that the only remaining plaintiffs are Ms. Preskar and Ms. Lawrence, as the first amended complaint identifies them as such, and they are the only ones who signed that pleading. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967) (amended complaint supercedes original); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original").

Plaintiff Preskar alleges she used to be a substitute teacher for the EGUSD, but decided in 2004 that she could no longer teach there, "or any other district that required diversity education," due to the "intimidating atmosphere." FAC, ¶¶ 59, 60. More specifically, plaintiff Preskar alleges that during her time as a substitute teacher, "diversity education" caused her to feel that she had to "apologize for being white" and could no longer be "proud of her race." FAC, ¶¶ 42-44. She alleges that her strongly held patriotic and Judeo-Christian beliefs were not given equal value, and that "she was not treated equally" because she did not adhere to "diversity thinking." FAC, ¶¶ 45-46.

Plaintiffs describe "diversity thinking" as a concept "holding that all ideas, values, morals, ethics, lifestyles, religion, and closely held personal beliefs (viewpoints) are equal, and people who think contrary, are not equal." FAC, ¶¶ 38, 67.

Like plaintiff Preskar, plaintiff Lawrence alleges that by 2004, she could no longer tolerate the "diversity thinking" within the EGUSD where her son was a student, and thus decided to put him in private school. FAC, ¶ 59. Plaintiff Lawrence alleges that she and her son were discriminated against because their "closely held personal beliefs" were not given equal time during diversity classes. FAC, ¶¶ 50, 51.

In particular, she alleges that a librarian sometimes picked on her son when he went to the library in lieu of attending a diversity class called "Advocacy." FAC, ¶ 50. Lawrence also complains of a book her son was required to read that purportedly sympathized with the plight of illegal aliens and offended her "closely held personal beliefs of American heritage." FAC, ¶ 53. She alleges that most of the classes her son attended "infiltrated a particular 'diversity thinking' that did not include the Lawrence family's closely held beliefs or viewpoints." FAC, ¶ 54. She alleges her son was treated differently and was "deprived of the liberty of being an equal human being with others." FAC, ¶¶ 54, 55. She claims the "religious and patriotic beliefs that she instilled in her son were not only being neglected and excluded, but also mocked and denigrated without equal protection of law afforded to others in the school." FAC, ¶ 57. Plaintiff Lawrence

3

therefore chose to place her son in a private school, and "ended up quitting her job as a Public Health Microbiologist" because the burden of transporting her son to and from school proved too much. FAC, ¶ 59.

The only specific educational program plaintiffs identify in the amended complaint is the "SEED program," which they allege classifies persons into different groups and excludes from "diversity status," persons of "European descent, Judeo-Christian faith, American heritage, and people who hold contrary viewpoints to diversity." FAC, ¶ 66. Plaintiffs allege that the SEED program "does not uphold American ideals of individuality, goal setting, and the work ethic" and that it promotes "global citizenship [as] a priority over sovereignty." FAC, ¶ 74. They fail to allege any concrete connection between this program and the named defendants.

Plaintiffs name the United States of America, the United States Congress, the U.S. Department of Education, and U.S. Secretary of Education, Margaret Spellings, as defendants (collectively referred to herein as the "federal defendants"). The federal defendants have filed a single motion to dismiss, as have the California State Assembly and the California Senate (erroneously sued as "The Congress of the State of California" and collectively referred to as the "state legislative defendants"). Plaintiffs also name as defendants the State of California, the California Department of Public Education, Jack O'Connell, the Superintendent of Public Instruction, and the California State Board of Education (collectively referred to as the "state defendants").

Plaintiffs ask the court to issue a "nationwide injunction to stop diversity discrimination in schools that use classification status to separate students and teachers by race, religion, heritage, and viewpoint that denies persons of European descent, Judeo-Christian faith, and American heritage from equal protection of the law by excluding them from diversity inclusion." FAC, ¶ 78. They also ask for "inclusion of specified classifications [i.e., European descent, Judeo-Christian faith, etc.] into diversity status," and allege that his would "alleviate financial loss and physical duress and psychological trauma, thus restoring the Plaintiffs' rights." FAC,

4

¶ 81. Thus, it appears that plaintiffs want the court to declare unconstitutional all educational programs that teach principles of diversity, and order the federal and California governments to revise these programs to acknowledge white, American Christians as a uniquely diverse classification in and of itself.

Although the first amended complaint is replete with allegations regarding plaintiffs' dissatisfaction with "diversity education," it is notably sparse in allegations linking any of the named defendants to the alleged wrongs suffered by plaintiffs and by "citizens everywhere." FAC, ¶ 61. Defendants move for dismissal on that basis, i.e., for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Defendants also challenge plaintiffs' standing to maintain this action. The court recommends dismissal on both bases.

## II. DISCUSSION

### A. Standing

All named defendants challenge plaintiffs' standing to prosecute this action. They point to the fact that neither plaintiff has any current contact with California's public education system. Preskar no longer works as a substitute teacher. Lawrence has opted to send her son to a private school. Moreover, a close reading of the complaint reveals that plaintiffs' grievances are of a generalized nature, aimed at striking down all diversity education programs nationwide until white, American, persons of Judeo-Christian faith traditions are given "diversity status." *See* FAC, 28:16 –29:20.

"The doctrine of standing is based both on prudential concerns and on constitutional limitations on the jurisdiction of the federal courts." *Doran v. 7-Eleven, Inc*., 506 F.3d 1191, 1195 (9th Cir. 2007) (citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997)). "The federal courts are not empowered to seek out and strike down any governmental act that they deem to be repugnant to the Constitution. Rather, federal courts sit solely, to decide on the rights of individuals, and must refrain from passing upon the constitutionality of an act unless . . . the question is raised by

a party whose interests entitle him to raise it." *Hein v. Freedom from Religion Found., Inc.*,127 S. Ct. 2553, 2562 (June 25, 2007) (internal quotations and citations omitted).

"To satisfy the case or controversy requirement of Article III, which is the irreducible constitutional minimum of standing, a plaintiff must, generally speaking, demonstrate" three elements. *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations omitted)). "First, the plaintiff must have suffered an 'injury in fact'– an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Doran*, 506 F.3d at 1195 (quoting *Lujan*, 504 U.S. 555, 560-61) (internal quotations omitted). Second, the plaintiff must allege a "causal connection between the injury and the conduct complained of." *Id.* Third, the alleged facts must demonstrate the likelihood that the injury will be redressed by a favorable decision. *Id.*

"In addition to these Article III requirements of injury in fact, causation, and redressibility, prudential standing concerns require" that courts consider "whether the alleged injury is more than a mere generalized grievance, whether the plaintiff is asserting her own rights or the rights of third parties, and whether the claim falls within the zone of interests to be protected or regulated by the constitutional guarantee in question." *Alaska Right to Life v. Feldman*, 504 F.3d 840, 848-49 (9th Cir. 2007) (citing *Johnson v. Stuart*, 702 F.2d 193, 196 (9th Cir. 1983) (internal quotations omitted)).

Here, both plaintiffs allege they have standing on the basis of their previous experiences with public schools and "as citizens of the United States and residents of California." FAC, ¶ 37. Californian and American citizenship are insufficient to establish plaintiffs' standing in this case. *See Hein*, 127 S. Ct. at 2569.

Furthermore, plaintiffs fail to allege a concrete and particularized injury caused by defendants that is redressible by a favorable decision. Plaintiffs have severed their ties with the public education system, and were not compelled to do so by any named governmental actor.

6

They have not named the EGUSD as a defendant, and they do not seek redress from that entity for concrete injuries suffered during experiences with it. *See Baker v. Carr*, 369 U.S. 186, 204 (1962) (the gist of standing is whether a plaintiff has alleged such a personal stake in the outcome of the controversy as to assure "concrete adverseness" and "illumination of difficult constitutional questions"); *see also Scott v. Rosenberg*, 702 F.2d 1263, 1267 (9th Cir. 1983) (a party must show that he personally suffered some harm that is fairly traceable to the challenged action and is likely to be redressed by a favorable decision).

Rather than seeking redress for actual harms incurred in the EGUSD, plaintiffs take aim at public education systems in general, alleging that they have been infiltrated by "diversity thinking." *See* FAC, ¶¶ 61, 78 (plaintiffs seek relief on a state and nationwide level on behalf of themselves and citizens everywhere). The allegations in this respect are so vague that it is nearly impossible to discern the actual injury at stake, who caused it, and how a favorable decision would redress it. Plaintiffs have thus failed to establish standing.

Moreover, the sweeping nature of their allegations makes clear that plaintiffs are presenting generalized grievances that are inappropriate for adjudication in federal court. *See Warth v. Seldin*, 422 U.S. 490, 499 (1979) (no standing where "the asserted harm is a generalized grievance shared in a substantially equal measure by all or a large class of citizens."); *United States v. Lazarenko*, 476 F.3d 642, 651 (9th Cir. 2007) (courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances) (quoting *Warth*, 422 U.S. at 499).

For example, plaintiffs challenge the "methodology used in diversity programs" taught in all schools, and seek redress for all "students . . . held captive in classrooms that incorporate diversity principles into everyday subject matter."[2] *See* FAC, ¶¶ 28, 31, 32. Plaintiffs generally

---

[2] The generalized nature of their complaints is underscored by the fact that plaintiffs initially attempted to prosecute this case as a class action, together with 160 other pro se litigants who are also offended by "diversity thinking."

7

assert that such programs are unconstitutional and they seek redress through elimination and/or reform of all such education programs. These allegations amount to little more than a generalized grievance against "diversity thinking," which plaintiffs have no standing to litigate.

### B. Failure to State a Claim

Even assuming standing, plaintiffs fail to state a claim for which relief may be granted against any of the named defendants.

#### 1. **Standard**

The Supreme Court has recently had occasion to revisit and clarify the standards governing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1964, 1970 (2007) (stating that the 12(b)(6) standard that dismissal is warranted if plaintiff can prove no set of facts in support of its claims which would entitle plaintiff to relief "has been questioned, criticized, and explained away long enough," and that having "earned its retirement," it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Thus, the grounds must amount to "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action. *Bell Atlantic*, 127 S.Ct. at 1965. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the compliant are true (even if doubtful in fact)." *Id*.

The crux of the standard is this. Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When a motion to dismiss attacks the sufficiency of the facts plead, the court assumes the complaint's factual allegations as true and determines whether those assumed facts give rise to a cause of action. *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984). In doing so, the court

construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). General allegations are presumed to include specific facts necessary to support the claim. *NOW*, 510 U.S. at 256 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Although courts will not normally look beyond the four corners of the complaint in resolving a Rule 12(b)(6) motion,[3] *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir.1997), *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001), a "court may consider material that the plaintiff properly submitted as part of the complaint or, even if not physically attached to the complaint, material that is not contended to be inauthentic and that is necessarily relied upon by the plaintiff's complaint." *Id*. Moreover, the court may disregard allegations of the complaint that are contradicted by attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998). Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts. *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

Additionally, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

---

[3] When a party relies on matters extrinsic to the complaint, Rule 12(b)(6) expressly mandates that the court either disregard the extrinsic material or invoke the procedural protections afforded under Rule 56 so that the non-moving party is provided the opportunity to present evidence sufficient to overcome the motion. These procedures include converting the matter to a motion for summary judgment under Rule 56 and providing notice to the non-moving party that the facts challenged in the complaint must be supported with evidence adequate to demonstrate a genuine issue of material fact. *Rosales v. United States*, 824 F.2d 799, 802 (9th Cir. 1987) (If matters external to the pleadings are presented to the court and not excluded, a Rule 12(b)(6) motion for failure to state a claim must be treated as a motion for summary judgment.).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

However, pro se pleadings are not exempt from the requirements of complaints generally. Although the court has an obligation to construe the pleadings of a pros se litigant liberally, *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc), the court's liberal interpretation of a pro se complaint may not supply essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### 2. **Application**

Plaintiffs allege that all of the named defendants "have a responsibility to the plaintiffs to grant them equal protection of the Constitution, statutes and education codes and apply these to the diversity education programs that have denied the plaintiffs their constitutional rights." FAC, ¶ 29. The claims suggests that educational programs that include "diversity education," as plaintiffs describe it, necessarily violates equal protection. Apart from the non sequitur of that legal conclusion, plaintiffs' complaint suffers from a number of fundamental flaws.

### a. **Federal Defendants**

Plaintiffs fail to explain how the federal defendants are responsible for diversity education. They vaguely refer to "Title IV and VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972, 42 U.S.C. § 2000, *et seq*." Title IV authorizes the U.S. Secretary of Education to render technical assistance to a school to implement a plan of desegregation. Title IX prohibits gender discrimination by any educational entity that receives federal financial assistance. Title VI prohibits racial discrimination by an entity that receives federal financial assistance. Section 602 of Title VI authorizes and directs each federal agency

that is empowered to distribute federal funds to "effectuate" the anti-discrimination mandate of Title VI by issuing rules, regulations, or orders consistent with Title VI.  *See* 42 U.S.C. § 2000d-1.  The complaint provides little clue as to how these statutes relate to the allegation that teaching "diversity education" violates equal protection.

Because plaintiffs have not made any allegations regarding segregation (Title IV) and or gender discrimination (Title IX), the court liberally construes the amended complaint as one brought under the Administrative Procedures Act ("APA") to compel the federal defendants to enforce the anti-discrimination mandate of Title VI.  *See* 5 U.S.C § 702 (authorizing suits against government agencies for relief other than money damages).  Even this claim, however, fails.

First, plaintiffs' allegations are so sweeping and vague that it difficult to discern which programs plaintiffs believe to be unlawfully discriminatory.  Even assuming plaintiffs seek to challenge specific programs administered within the EGUSD, a suit under § 702 is available only where "there is no other adequate remedy in a court."  5 U.S.C. § 704.

There is an implied right of action under Title VI.  However, pursuant to the Supreme Court's holding in *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979), that implied right of action is against the specific institutions that have committed the alleged discrimination. *Washington Legal Found. v. Alexander*, 299 U.S. App. D.C. 353 (D.C. Cir. 1993).  Regardless of plaintiffs' satisfaction with the result it yields in the context of their claims, that implied right of action is an "adequate" remedy to redress the discrimination allegedly suffered by plaintiffs and it is "therefore preclusive of a default remedy under the APA."  *Women's Equity Action League v. Cavazos*, 285 U.S. App. D.C. 48, 906 F.2d 742, 745 (D.C. Cir. 1990).

Here, to the extent plaintiffs mean to allege that they suffered discrimination during their time within the EGUSD, their remedy is to pursue relief against that entity, not against the federal government under the APA.

Plaintiffs have failed to identify any other federal statute or regulation that provides for the injunctive and declaratory relief they seek against the federal defendants.  Moreover, they

11

have failed to allege any specific facts giving rise to a cause of action against the United States Congress. Accordingly, plaintiffs' claims against the federal defendants must be dismissed. The court finds the further amendment would be futile and therefore recommends dismissal of these defendants without leave to amend.

### b. **State Legislative Defendants**

The court also recommends dismissal without leave to amend as to the state legislative defendants. Plaintiffs fail to make specific factual allegations against the California Assembly or Senate concerning their alleged injuries. To the extent they seek to have this court order the state legislature to amend the cited sections of the California Penal and Education Codes, the court is without authority to provide that relief.[4]

Finally, to the extent plaintiffs seek to have this court declare various state laws unconstitutional, the California legislature is not a proper party in such a lawsuit. *See San Francisco NAACP v. San Francisco Unified School Dist.*, 484 F. Supp. 657, 665 (N.D. Cal. 1979) (explaining that in actions for declaratory and injunctive relief challenging the constitutionality of state statutes, the legislature is not a proper party pursuant to the doctrine of separation of powers) (citing *Serrano v. Priest*, 18 Cal.3d 728, 751-52 (1976)); *see also Wolfe v. City of Fremont*, 144 Cal. App. 4th 533, 551 (Cal. Ct. App. 2006) ("it is the general and long-established rule that in actions for declaratory and injunctive relief challenging the constitutionality of state statutes, state officers with statewide administrative functions under the challenged statute are the proper parties defendant.") (quoting *Serrano*, 18 Cal.3d at 725).

---

[4] Plaintiffs cite Cal. Pen. Code §§ 422.6 (prohibiting injury or threat to person or property based on specified beliefs or characteristics of victim), 628, 628.1, 628.2, and 628.5 (declaring students' inalienable right to attend classes on campuses that are safe, and mandating that schools report incidents of crime) (repealed in 2005). Plaintiffs also cite the following provisions of the Education Code, §§ 220, 221.5, 221.7, 233, 233.5, 233.8, 250 -253, 260, 261, 262.3, 3228, 49422e, 51500, 51501, 51513, 51530, 51240, 60044, 66252, 66272, 66292-66292.2, 72011, which plaintiffs claim require "that schools shall create and/or provide environments free of discriminatory attitudes and practices." Plaintiffs provide no further elucidation as to how these cited statutes play into their allegations against the named defendants.

12

Accordingly, the state legislative defendants' motion to dismiss should be granted without further leave to amend.

### c. **State Defendants**

Finally, with regard to the remaining state defendants – the State of California, the California Department of Education, California State Board of Education, and Jack O'Connell, Superintendent of Public Instruction – the court recommends dismissal without leave to amend.

Plaintiffs fail to state a claim for relief under § 1983. Although plaintiffs claim that "enforced diversity education and in-service training infringe [their] . . . constitutional rights to free speech under the First Amendment, their liberties under the Ninth Amendment, and liberty under the Fourteenth Amendment Due Process Law," they fail to allege what, if any, specific actions the state defendants took, or failed to take, with respect to such constitutional deprivations, or that such actions were under color of state law. FAC, ¶ 36; *See West v. Atkins*, 487 U.S. 42, 48 (1988)(to state a claim under § 1983, plaintiff must allege (1) a person deprived him of a constitutional right (2) under color of state law).

Moreover, the State of California, the California Department of Education and the California State Board of Education are not proper defendants under § 1983. *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir.1999) ( "The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state.") (citing *Pennhurst v. Halderman*, 465 U.S. 89, 100 (1984)); *see also Durning v. Citibank, N.A.*, 950 F.2d 1419, 1422-23 (9th Cir. 1991) (stating the Eleventh Amendment bars virtually all suits seeking relief against a state, an "arm of the state," or its agencies). Section 1983 does not abrogate the states' Eleventh Amendment immunity from suit. *See Quern v. Jordan*, 440 U.S. 332, 344-45 (1979). Accordingly, as a general rule, states cannot be sued in federal court for violating § 1983. Thus, the State of California, the California Department of Education, and the California State Board of Education should be dismissed without leave to amend.

////

Even though the Eleventh Amendment theoretically protects state agencies and state officials from § 1983 actions, state officials nevertheless may be sued in their individual capacities for both damages and injunctive relief. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). Moreover, in a case based on an ongoing violation of federal constitutional or statutory rights, a plaintiff may obtain prospective injunctive relief by naming a state official in his or her official capacity. *Ex parte Young*, 209 U.S. 123, 155-56 (1908); *Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) ("When sued for prospective injunctive relief, a state official in his official capacity is considered a 'person' for § 1983 purposes."). Finally, that plaintiff may not have expressly named a defendant in his official capacity is not necessarily fatal—the complaint could be amended, and in any event courts have looked to the substance and course of the proceedings, and the relief sought, to determine the nature of a § 1983 suit. *See Biggs v. Meadows*, 66 F.3d 56, 59-60 (4th Cir. 1995) (discussing various approaches to interpreting complaints that fail to plead the capacity in which a defendant is sued under § 1983).

On that basis, the only proper defendant under § 1983 is Jack O'Connell, Superintendent of Public Instruction, insofar as plaintiffs intended to name him in his official capacity for prospective injunctive relief. Reading the amended complaint liberally, the court will construe plaintiffs' claims as such since the relief they seek is injunctive in nature. *See* FAC, 28:16-29:20 (prayer for relief). Nonetheless, plaintiffs' claims fail as a matter of law.

As discussed above, plaintiffs lack standing to compel the Superintendent to redraft the educational code and state policy to conform to their world view. Further, plaintiffs state no constitutional claims against the Superintendent.

To the extent they predicate their § 1983 claims on a violation of the Ninth Amendment, that claim must fail. The Ninth Amendment does not independently create a constitutional right for purposes of stating a claim.[5] *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir.

---

[5] The Ninth Amendment provides, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. CONST.

14

1991) (citing *Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986)).  It is "*not* a source of rights as such; it is simply a rule about how to read the Constitution."  *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996) (quoting Laurence H. Tribe, *American Constitutional Law* 776 n.14 (2d ed. 1988)) (emphasis in original).

With regard to their assertions that defendants violated their First Amendment rights, plaintiffs fail to state a claim, let alone allege specific facts linking defendants' action or inaction to the alleged constitutional violations.  *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (May 21, 2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.") (citing *Conley v. Gibson*, 355 U.S. 41 (1957)).

Here, Plaintiff Preskar claims that she "decided that she could not teach in the Elk Grove Unified School District . . . [due to the] intimidating atmosphere [that] did not allow the plaintiff freedom of expression."  FAC, ¶60.

For an employee to state a claim for a violation of the First Amendment, she must show that: (1) she engaged in protected speech; (2) the employer took an adverse employment action against her; and (3) her speech was a substantial factor in the employer' adverse employment action.  *See Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996).  "In evaluating the First Amendment rights of a public employee, the threshold inquiry is whether the speech in question substantially addressed a matter of public concern.  If not, the First Amendment is not triggered."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 978 (9th Cir. 1998).

Here, plaintiff has not even named the EGUSD as a defendant.  Moreover, she does not allege that she engaged in protected speech concerning a matter of public concern while she was a substitute teacher at EGUSD, nor does she allege that she suffered a related adverse

---

amend. IX.

15

1 employment action.  Finally, plaintiff Preskar fails to identify a specific individual or policy that
2 stifled her freedom of expression, nor does she identify a connection between this alleged
3 violation and any of the named defendants.

4     Plaintiff's Lawrence's claims (to the extent they reflect her personal experiences rather
5 than her broad dissatisfaction with all diversity education), are tied to her son's exposure to
6 "diversity thinking" in public school and the school's failure to give equal footing to her values
7 and beliefs.  *See, e.g.,* FAC, ¶ 57.  Her claim seems to be rooted in her due process right to raise
8 her children, as she alleges that diversity education interferes with that right. *See, e.g.*, FAC,
9 ¶¶ 54-55.

10     "The Supreme Court has held that the right of parents to make decisions concerning the
11 care, custody, and control of their children is a fundamental liberty interest protected by the Due
12 Process Clause."  *Fields v. Palmdale Sch. Dist*., 427 F.3d 1197, 1204 (9th Cir. 2005).  "This
13 right is commonly referred to as the *Meyer-Pierce* right because it finds its origin in two
14 Supreme Court cases, *Meyer v. Nebraska*, 262 U.S. 390 (1923), and *Pierce v. Society of Sisters*,
15 268 U.S. 510 (1925)."  *Id.* (parallel citations omitted).

16     That right, however, does "not afford parents a right to compel public schools to follow
17 their own idiosyncratic views as to what information the schools may dispense."  *Fields*, 427
18 F.3d at 1205-06.  Parents have no "fundamental constitutional right to dictate the curriculum at
19 the public school to which they have chosen to send their children."  *Id.* at 1205 ("If all parents
20 had a fundamental constitutional right to dictate individually what the schools teach their
21 children, the schools would be forced to cater a curriculum for each student whose parents had
22 genuine moral disagreements with the school's choice of subject matter.  We cannot see that the
23 Constitution imposes such a burden on state educational systems, and accordingly find that the
24 rights of parents . . . do not encompass a broad-based right to restrict the flow of information in
25 the public schools.") (quoting *Brown v. Hot, Sexy & Safer Prods., Inc*., 68 F.3d 525, 533-43 (1st
26 Cir. 1995)).  This is the very concern confronted here.  These plaintiffs object, apparently

vociferously, to any school curriculum that includes elements of what they term "diversity education." Given the generalized nature of their attack, it is not entirely clear exactly what they object to and what they mean by "diversity education." But whatever their preference, the fundamental barrier to their legal challenge is that the constitution does not empower them to dictate the curriculum of the public schools. Here, plaintiff Lawrence no longer has a child in public school. But even if she did, and sued the school concerning specific programs, she could still not obtain the relief she seeks, i.e., an injunction against, and subsequent reform, of all diversity education in public schools.

Finally, to the extent plaintiffs allege they were treated unequally in violation of their constitutional rights because their personal beliefs were different from "diversity thinking," they have failed to state a claim. To state a claim under § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, plaintiffs must show that the defendants acted with an intent or purpose to discriminate against them based upon their membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999). Plaintiffs fail to allege any acts directed at them that were based on their membership in some class of persons. They also fail to allege any actions by the named defendants that constitute unequal treatment. Their allegations of "unequal treatment" are vague and appear to concern peoples' disagreement with their opinions, rather than any actionable conduct. To the extent they allege that "diversity education" does not acknowledge the equal value of white Americans of Judeo-Christian faith traditions, their allegations are too vague and conclusory to give rise to a cause of action. *See Ivey*, 673 F.2d at 268 (conclusory allegations of discrimination are insufficient to withstand a motion to dismiss).

For the foregoing reasons, plaintiffs fail to state a claim under § 1983 against any of the named defendants. Moreover, given their lack of standing, further amendment of the complaint would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1128 (9th Cir. 2000) (dismissal of a pro se complaint for failure to state a claim is proper where amendment would be futile).

## III. CONCLUSION

In accordance with the foregoing, IT IS RECOMMENDED that:

1. The motions to dismiss filed by the federal defendants, the state legislative defendants, and the state defendants be granted without further leave to amend; and,

2. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED:   February 25, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE